IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **CHARNETTE I. ROBINSON,** | | |
| | * | |
| **Plaintiff,** | | |
| **v.** | * | **Case No.: GJH-20-2246** |
| | | |
| **CITY OF MOUNT RAINIER, *et al.*,** | * | |
| | | |
| **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Charnette I. Robinson brings this civil action against Defendants City of Mount Rainier, Malinda Miles, Celina Mendez Benitez, Luke Chesek, Bryan Knedler, Shivali Shah, and Miranda Braatz for violations of her First Amendment rights under 42 U.S.C. § 1983 (Count I, against the individual defendants, and Count V, against the City of Mount Rainier), defamation (Count II), violations of the Maryland Public Information Act, MD. CODE ANN., GEN. PROV. §§ 4-101–4-601(Count III), conspiracy under 42 U.S.C. § 1983 (Count IV), and violations of Articles 19 and 40 of the Maryland Declaration of Rights (Count VI). ECF No. 2-1. Pending before the Court are Defendants' Motions to Dismiss, ECF Nos. 4, 7, 21.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendants' Motions to Dismiss are granted, in part, and denied, in part.

---

[1] Also pending before the Court is Plaintiff's Motion to Extend Time to Respond to Defendants' Motion to Dismiss. ECF No. 13. Because Defendants consent to the motion and will not suffer prejudice due to the delay, Plaintiff's motion is granted.

## I.      BACKGROUND[2]

### A. Plaintiff's Public Information Requests—Police Department

Plaintiff Charnette I. Robinson has lived in the city of Mount Rainier, a municipality in

Prince George's County, Maryland that borders Washington, D.C., since 1993. ECF No. 2-1 ¶ 3,

12. She retired as a Commander with the Metropolitan Police Department in 2018 after thirty-

two years of service. *Id.* ¶ 12. Plaintiff alleges that she has had ongoing conversations with

former Police Chief Michael Scott, Captain Jimmy Scoots, and Mount Rainier Mayor Malinda

Miles regarding the treatment of Mount Rainier youth by the Mount Rainier Police Department.

*Id.* ¶ 13. In 2017, while Chief Scott was still serving in his position, Plaintiff obtained crime

statistics and arrest rates from him showing that the vast majority of the Department's arrestees

were African American. *Id.* ¶ 14. On July 12, 2018, after Chief Scott retired, Plaintiff requested

additional crime and arrest statistics from Acting Chief Stephen O'Malley ("Request #1"), but

despite initially stating that he would make them available, he refused to provide them. *Id.* ¶¶

15–16.[3]

Following this refusal, on August 14, 2018, Plaintiff submitted a public information

request[4] ("Request #2") to the Mount Rainier Board of Elections for arrest statistics and stop-

and-frisk reports from January 2015 through July 12, 2018. *Id.* ¶ 17; *see also id.* at 18.[5] On the

---

[2] Unless stated otherwise, all facts are taken from Plaintiff's Complaint or documents attached to and relied upon in the Complaint and are accepted as true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

[3] The Complaint does not state whether this request was made in writing. However, in a letter sent from Plaintiff to the Mount Rainier City Council on August 14, 2018, attached to the Complaint, she references a request for arrest statistics and stop-and-frisk reports that she made during a July 12, 2018 phone call with Acting Chief O'Malley. *See* ECF No. 2-1 at 33. The letter states that Acting Chief O'Malley had agreed to provide the information but had failed to do so as of August 14, 2018. *See id.*

[4] Although Plaintiff styles several of her requests, including the one submitted on August 14, 2018, as "FOIA requests," because she requests information from state, county, or municipal government agencies under Maryland's Public Information Act, rather than a federal agency under the Freedom of Information Act, 5 U.S.C. § 552, they are understood to be MPIA requests.

[5] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

2

same day, she sent another MPIA request ("Request #3") to the Office of the City Manager for

information about the Mount Rainier Police Department, including:

1. The name, rank, and position of all members of the department "prior to and after July 1, 2018";
2. The name of any employee that received a raise "prior to and after July 1, 2018";
3. "Copies of any grievances filed by Mount Rainier Police Officers prior to July 1, 2018" as well as "[c]opies of any agreements/settlements reached with said grieved employees after July 1, 2018" and "[c]opies of any meetings/minutes between the City Manager" and those grieved officers prior to July 1, 2018;
4. Copies of any resignation letters from officers before July 1, 2018; and
5. "Copies of all employee's starting salaries, pay scales, raises, performance evaluations and justification for raises" from September 2016 through July 2018.

*Id.* ¶ 17; *id.* at 20. Plaintiff requested fee waivers in both requests, stating "the disclosure of the

requested information is in the public interest and will contribute significantly to the public's

understanding of election practices," regarding the first request, and the "to the public's

understanding of handling of employee grievances and settlements," for the second. *Id.* ¶ 18; *id.*

at 18, 20.

On September 14, 2018, Defendant Miranda Braatz—then-City Manager of the City of

Mount Rainier, *see id.* ¶ 9—responded to Plaintiff regarding Request #3. *Id.* at 22–23. Enclosed

with her response were "[c]opies of all employees' . . . pay scales . . . beginning September 2016

to July 2018." *Id.* at 23 (ellipses in original). Defendant Braatz denied Plaintiff's requests for

other categories of information, stating they constituted personnel records not subject to

disclosure under MD. CODE ANN., GEN. PROV. § 4-311 or that the City did not have responsive

records. *Id.* at 23. Finally, with respect to several of Plaintiff's other requests, she explained,

"[t]he production of responsive records . . . will require an extensive search of City personnel

and finance records" and "redaction of confidential information by the City Attorney." *Id.* at 22.

Defendant Braatz further stated, "[w]e anticipate that locating the responsive records will take at

least 50 hours of search time by the Human Resources Director or Police Chief at an hourly rate

of $40," and requested $1,920.00 "to begin the search." *Id.*; *see also id.* ¶ 18. Defendant denied

Plaintiff's fee waiver request, stating that she had "not demonstrated an inability to pay the cost"

and that "the City is not aware of broad public interest or demand for the detailed information

you are seeking." *Id.* at 23.

On November 2, 2018, Plaintiff sent a request to the Office of the City Manager for the

uniformed crime reports and calls for service for the Mount Rainier Police Department for 2017

and 2018 ("Request #4"), again asking that the information be provided "at no charge." *Id.* ¶ 19;

*id.* at 25. On November 6, 2018, she submitted another request ("Request #5") to the Office of

the City Manager for the following information for the time period between July 1, 2018, and

November 1, 2018:

1. Police officers' schedules;
2. The number of officers on patrol;
3. "Documentation of all assignments received and handles on each tour of duty and final disposition;"
4. Stop-and-frisk reports; and
5. "Documentation of the number of vehicles ticketed for violation of reciprocity."

*Id.* ¶ 19; *id.* at 27. Request #5 did not include a fee waiver request. *See id.* at 27. Finally, on

December 12, 2018, Plaintiff sent a request for "various police records" ("Request #6"). *Id.* ¶ 20.

She did not include a copy of the request with her Complaint but, based on City Attorney

Kenneth Sigman's response on January 4, 2019, it appears the request was identical to Request

#5. *See id.* at 29.

In his response to Request #6, Mr. Sigman stated that "some responsive records" existed

for the first category in her request, regarding officers' schedules. *Id.* "No responsive records"

existed with respect to the second category—the number of officers assigned to patrol. *Id.*

Regarding the third category, "assignments received and handled," Mr. Sigman stated, "[w]e will

have to develop a report that extracts the requested information from a database." *Id.* Finally,

with respect to the final two categories, he said the information would "require an extensive search of electronic and paper records by Police Department staff and the City's IT contractor" as well as "review of the responsive records and redaction of confidential information by the City Attorney," estimated to take 26 hours of staff time at a cost of $1,500. *Id.* at 30. Mr. Sigman instructed Plaintiff that she would need to pay that amount if she wished for them to proceed with the search. *Id.*

**B. Plaintiff's Public Information Requests—Elected Officials**

On July 12, 2018—the day she made Request #1 to Acting Chief Stephen O'Malley but before Requests #2–6 were submitted—Plaintiff made a "telephonic request" for information related to the "administration, duties and responsibilities of the current Ethics Board" ("Request #7") and was told the request was conveyed to Defendant Braatz. *Id.* at 32; *see also id.* ¶ 22. Based on a letter drafted by Plaintiff on August 14, 2018, and attached to the Complaint, it appears Request #7 included:

1. Names and dates of terms of "all members that served on the Ethics Board from 2013 to present";
2. "Copies of all complaints and information" the Ethics Board handled during that time;
3. "Copy of all training provided to the Ethics Board members";
4. Guidelines provided to the Ethics Board from the City Manager; and
5. Minutes from meetings between the Ethics Board and City manager.

*See id.* at 32.

In the Complaint, Plaintiff alleges that she received a response on July 16, 2018, when Defendant Braatz informed her that the terms for the Ethics Commission had expired. *Id.* ¶ 22. However, in the August 14, 2018 letter attached to her Complaint, Plaintiff states that she received an email from Defendant Braatz on July 16, 2018 "advising that the council was aware

of the situation with the Ethics Board and that they would be addressing this matter during their September session." *Id.* at 33.

According to Plaintiff, "due to the rebuffs" she received "in response to her requests for police records and data"—presumably meaning Request #1, as that was the only request related to the police department that had been filed at the time—she decided to file an ethics complaint with the City of Mount Rainier Ethics Commission. *Id.* ¶ 22.[6] On August 14, 2018, Plaintiff sent a complaint to the Mayor and City Council, raising not only Plaintiff's concerns with Acting Police Chief Stephen O'Malley's failure to respond to Request #1, but also Defendant Braatz's failure to respond to Request #7. *Id.* ¶ 23; *id.* at 32–34.[7]

On January 8, 2019, the City Council voted in five new members of the Ethics Commission after accepting resumes for the positions. *Id.* ¶ 24. The names of those who had submitted resumes, as well as the resumes themselves, were given out at a Council Meeting on November 27, 2018.[8] *Id.* ¶ 26. However, Plaintiff alleges that one individual ultimately chosen for the Ethics Commission, Devon Brown, was not named at that meeting, and his resume was not distributed. *Id.* ¶¶ 24, 26.

On January 11, 2019, Plaintiff sent another request to the Office of the City Manager ("Request #8") asking for information related to the Ethics Commission and the selection process, including:

---

[6] The Complaint appears to conflate the August 14, 2018 complaint to the Ethics Commission with the July 12, 2018 request for information about the Ethics Commission, *see* ECF No. 2-1 ¶ 22; this section of the factual allegations is not clear. However, the Court understands the "ethics complaint" to be separate from the request for information based on its review of the documents attached to the Complaint.

[7] According to the Complaint, Defendant Braatz told Plaintiff "that she could send the ethics complaint to her, and she would ensure that it was received by the Ethics Commission," but because the ethics complaint involved allegations against Defendant Braatz, "Robinson decided to send the ethics complaint to the Mayor and City Council." ECF No. 2-1 ¶ 22.

[8] The Complaint does not specify the date of the meeting at issue, but the Court understands it to be November 27, 2018, based on its review of the January 11, 2019 request for information, which Plaintiff attached to the Complaint. *See* ECF No. 2-1 at 36.

1. All resumes submitted for consideration;
2. Documentation of email and verbal communications between residents that participated in the section process and councilmembers;
3. Statements from councilmembers that recommended or solicited participation from a resident and the dates the statements were submitted;
4. The "final list of names read off by Councilmember Celina Benitez" at the November 27, 2018 meeting;
5. A "copy" of that meeting; and
6. "Documentation of votes cast by City Council members at the meeting held on January 8, 2019," when the new members of the Ethics Commission were finally selected.

*Id.* ¶ 25; *id.* at 36.[9] She requested that the information be provided "at a very minimal cost." *Id.* at 36.

Mr. Sigman responded on January 15, 2019. *Id.* at 38–39; *id.* ¶ 25. He first advised Plaintiff that the first three categories of requested information contain personnel information exempted by the MPIA from disclosure, but that Plaintiff's own resume and information could be disclosed to her, suggesting she had submitted herself for consideration for the Commission. *Id.* at 38–39. The remaining four categories of information, he said, would require a search estimated to cost $300. *Id.* at 39.

Plaintiff alleges that Defendant Braatz's and the City Council's refusal to provide her the requested information led her "to immediately question the legitimacy of the City Council," and "it was against this backdrop of failures to disclose information" that she decided to submit another request ("Request #9") to the Office of the City Manager on February 15, 2019, this time on behalf of the Mount Rainier MD Citizens for Government Ethics and Fiscal Accountability. *Id.* ¶¶ 27–28; *id.* at 42. Request #9 sought certain information about the City Manager and members of the City Council, Directors, and Ethics Commission, including their criminal background checks, valid drivers' permits, financial disclosure statements, U.S. security

---

[9] She also requested "[d]ocumentation of the number of vehicles ticketed for violation of reciprocity" from July 1, 2018, to November 1, 2018, ECF No. 2-1 at 36, a repeat request from Request #5, *id.* at 27.

clearance, and—of particular relevance here—"[d]ocumentation of all United States Citizen Status for all elected persons serving on the Mount Rainier City Council, and any revisions to the Charter than may effect [sic] this provision." *Id.* ¶ 28 (edit in Complaint); *id.* at 42. It appears from the Complaint that the provision Plaintiff referenced was Section 302 of the City of Mount Rainier Charter, which states that each candidate for Mayor and Councilmember must be a United States citizen. *Id.* ¶ 29.[10]

### C.  Defendant Benitez's Open Letter

On or about March 3, 2019—before Plaintiff had received a response to Request #9— Defendant Celina Mendez Benitez, a member of the Mount Rainier City Council, wrote an open letter on the Mount Rainier Facebook page concerning that request ("the Open Letter"), naming and criticizing Plaintiff. *Id.* ¶¶ 5, 30. The Open Letter stated:

> As a migrant, a US naturalized citizen, and elected official, I find it unacceptable and harmful for neighbors to ask one another about their citizenship status. It is hard to take this request as anything but a thinly-veiled attempt to provoke and convey distrust. This FOIA request is not normal, and no better than a racist pursuit for a president's birth certificate. . . . This action continues a concerning trend by . . . Charnette Robinson, where in the last election she questioned my residency status and the voting rights of immigrants in Mount Rainier. . . . I call this FOIA request what it is – xenophobic and alarmist.

*Id.* at 44–45. Another City Council member, Luke Chesek, then distributed Plaintiff's request to the official Mount Rainier email listserv and announced a meeting to be held on March 17, 2019, to discuss Request #9 and the Open Letter. *Id.* ¶¶ 6, 30; *id.* at 43.

After the publication of the Open Letter, Mount Rainier residents "opined unequivocally that Robinson was a racist." *Id.* ¶¶ 38, 40; *see also id.* at 46. Plaintiff alleges that Defendant Benitez had intended this exact result—the two had competed in an election for a vacant council

---

[10] In referencing "revisions" that could affect that provision, Plaintiff may have been alluding to Resolution 1-2016, which included a Charter amendment allowing noncitizens to vote. *See id.* at 52.

seat in 2018, which Defendant Benitez had won, and were competing again in 2019. *Id.* ¶¶ 33, 34, 38, 40. *Id.* Plaintiff attributes her loss to the Open Letter. *Id.* ¶ 40.

Plaintiff further alleges that the City Council, Defendant Braatz, and Defendant Miles thought she "needed to be silenced," as she had become "a thorn in their side" through her requests for information. *Id.* ¶ 39. According to Plaintiff, "one of the consequences" of the Open Letter "is that any future attempt to shed light on the numerous improprieties that are par for the course in the City of Mount Rainier will always be framed as the ramblings of a bigot." *Id.* ¶ 43.

Plaintiff alleges that she discussed her concerns about the Open Letter with Defendant Miles, but Defendants Miles and Braatz failed to act in response to her concerns. *Id.* ¶ 36. Plaintiff then sent a letter on March 12, 2019, to Defendant Miles, the Ethics Commission, the City Council, "and others" requesting that action be taken against Defendants Benitez, Chesek, and Braatz for their failure to respond to her MPIA requests and "their conduct relating to the 'open letter.'" *Id.* ¶ 37; *id.* at 48–50. Mr. Sigman responded to Request #9 the following day, March 13, 2019, asserting that documentation of citizenship status of elected officials constitutes confidential personnel records that are not subject to disclosure under MD. CODE ANN., GEN. PROV. § 4-311. *Id.* ¶ 37; *id.* at 52–53. He sent Plaintiff another letter on March 25, 2019, addressing her broader concerns with the responses to her requests and with the conduct related to the Open Letter. *Id.* ¶ 37; *id.* at 55–57.

### D. Procedural History

Plaintiff filed suit against Defendants—the City of Mount Rainier ("the City"), City Manager Miranda Braatz, Mayor Malinda Miles, and Councilmembers Celina Mendez Benitez, Luke Chesek, Bryan Knedler, and Shivali Shah—in the Circuit Court for Prince George's County on June 24, 2020. ECF No. 1; ECF No. 2-1. Plaintiff alleged violations of her First

Amendment rights under 42 U.S.C. § 1983 (Count I, against the individual defendants, and

Count V, against the City of Mount Rainier), defamation (Count II), violations of the Maryland

Public Information Act, MD. CODE ANN., GEN. PROV. §§ 4-101–4-601 (Count III), conspiracy

under 42 U.S.C. § 1983 (Count IV), and violations of Articles 19 and 40 of the Maryland

Declaration of Rights (Count VI). ECF No. 2-1.

On August 4, 2020, Defendants removed the action to this Court. ECF No. 1. On the

same day, Defendants City of Mount Rainier, Miles, Benitez, Knedler, and Chesek filed a

Motion to Dismiss. ECF No. 4. Defendant Shah filed a separate Motion to Dismiss on August 5,

2020, adopting and incorporating the arguments stated in Defendants' earlier Motion. ECF No.

7. Plaintiff filed an Opposition to Defendants' Motion on August 24, 2020. ECF No. 16.

Defendants City of Mount Rainier, Miles, Benitez, Knedler, Chesek, and Shah filed a Reply on

the same day. ECF No. 17. On September 3, 2020, Defendant Braatz filed a separate Motion to

Dismiss, ECF No. 21, which Plaintiff opposed on September 17, 2020, ECF No. 22.

## II.     STANDARD OF REVIEW

Defendants move to dismiss the Complaint for failure to state a claim under Federal Rule

of Civil Procedure 12(b)(6). ECF No. 4-1 at 10–22. A motion to dismiss under 12(b)(6) "test[s]

the adequacy of a complaint." *Prelich v. Med. Res., Inc.*, 813 F. Supp 654, 660 (D. Md. 2011)

(citing *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008)). Motions to dismiss for failure to

state a claim do "not resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." *Prelich*, 813 F. Supp. 2d at 660 (quoting *Edwards v. City of

Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To overcome a Rule 12(b)(6) motion, a

complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating the sufficiency of the plaintiff's claims, the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court should not grant a motion to dismiss for failure to state a claim unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989)).

## III.    DISCUSSION

Because it is relevant to several of Plaintiff's claims, the Court first discusses the Maryland Public Information Act ("MPIA"). MD. CODE ANN., STATE GOV'T ("S.G.") §§ 10-601, *et seq.*; MD. CODE ANN., GEN. PROV. ("G.P.") §§ 4-101–4-601. The MPIA was enacted in 1970, four years after Congress enacted the federal Freedom of Information Act ("FOIA"), and they advance "virtually identical" public policy objectives. *Action Comm. for Transit, Inc. v. Town of Chevy Chase*, 229 Md. App. 540, 558, 145 A.3d 640, 650 (2016). "The MPIA codifies the ideal of open government," *Shriner v. Annapolis City Police Dep't*, No. CIV.A. ELH-11-2633, 2012 WL 959380, at *2 (D. Md. Mar. 19, 2012)—that "[a]ll persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees," S.G. § 10–612(a). To that end, the MPIA states that, "[e]xcept as otherwise

11

provided by law, a custodian shall permit a person or governmental unit to inspect any public

record at any reasonable time," S.G. § 10–613(a)(1), and that "[i]nspection or copying of a

public record may be denied only to the extent provided" by the MPIA, S.G. § 10–613(a)(2).

While the MPIA provides the public with the right to inspect public records of Maryland

state and local government agencies, the agency may charge a reasonable fee to search for,

prepare, and reproduce the requested records. G.P. § 4-206(b)(1). The agency may waive this fee

if "the applicant asks for a waiver," *id.* § 4-206(e)(1), and, if "after consideration of the ability of

the applicant to pay the fee and other relevant factors, the official custodian determines that the

waiver would be in the public interest," *id.* § 4-206(e)(2)(ii).[11]

### A. Count I – First Amendment Claim Under § 1983 Against Individual Defendants

Plaintiff first brings a First Amendment retaliation claim against the individual

Defendants: Malinda Miles, Celina Mendez Benitez, Luke Chesek, Bryan Knedler, Shivali Shah,

and Miranda Braatz. ECF No. 2-1 at ¶¶ 46–51. She specifically alleges that Defendants failed to

provide her information requested under the MPIA and failed to waive fees for the requests in

violation of Plaintiff's First Amendment rights. *Id.* ¶ 47. She further alleges that the posting of

the Open Letter violated her First Amendment rights, as it was retaliatory and intended to

damage her reputation and ensure she lost the City Council election. *Id.* ¶ 48.

Plaintiff brings her claims under 42 U.S.C. § 1983, which imposes civil liability on a

person who, under color of State law, deprives any citizen of the United States or other person

under the jurisdiction thereof of any right secured by the Constitution or laws of the United

States. *See* 42 U.S.C. § 1983. In this respect, § 1983 "is not an independent source of substantive

---

[11] Unlike the MPIA, the FOIA does not provide for consideration of a requestor's ability to pay. *See* FOIA, 5 U.S.C. § 552(a)(4)(A)(iii) ("[D]ocuments shall be furnished without any charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requestor[.]").

rights, but simply a vehicle for vindicating preexisting constitutional and statutory rights." *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017) (citing *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)).

Claims brought under § 1983 must allege personal involvement on the part of the defendant. *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) ("Liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights." (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)); *Duncan v. Lee*, No. 7:20CV00554, 2020 WL 6875038, at *1 (W.D. Va. Nov. 23, 2020) ("Liability under § 1983 is 'personal, based upon each defendant's own constitutional violations.'" (quoting *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001))). Supervisory liability only attaches where subordinates engage in conduct posing a "pervasive and unreasonable risk" of constitutional injury, and a supervisor's response is so inadequate that it shows "deliberate indifference or tacit authorization" of the misconduct, *Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 206 (4th Cir. 2002) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)), such that the individual's actions can be considered a "causative factor in the constitutional injuries," *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Plaintiff has not alleged any personal involvement or culpability on the part of Defendants Miles, Knedler, or Shah. Her conclusory statement that "Miles, Braatz and the City Council's failure to act after they were made aware of the actions of Benitez and Chesek made them complicit in the acts of Benitez and Chesek" is insufficient. *See* ECF No. 2-1 ¶ 49. Mere knowledge and inaction in the face of others' actions, without more, does not support a finding of liability under § 1983. This is especially true when the allegations involve a single occurrence, rather than a widespread pattern. *See, e.g.*, *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)

("Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct

is widespread, or at least has been used on several different occasions and that the conduct

engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury."); 

*Slakan*, 737 F.2d at 373 ("Ordinarily, [the plaintiff] cannot satisfy his burden of proof by

pointing to a single incident or isolated incidents, as a supervisor cannot "reasonably be expected

to guard against the deliberate criminal acts of his properly trained employees when he has no

basis upon which to anticipate the misconduct."); *Thompson v. Dorsey*, No. CIV.A. ELH-10-

1364, 2011 WL 2610704, at *5 (D. Md. June 30, 2011) (dismissing supervisory liability claim

involving only one allegation of misconduct). Moreover, it is not clear that members of a city

council can be held responsible on a theory of supervisory liability for their colleagues' actions,

or that a mayor can be held responsible for the actions of a city council. Therefore, this claim

fails as to Defendants Miles, Knedler, and Shah. Similarly, Plaintiff has not alleged personal

involvement, and thus liability, on the part of Defendants Benitez and Chesek for the MPIA

request responses or Defendant Braatz for the Open Letter. The Court will therefore consider

Plaintiff's allegations regarding the MPIA requests only with respect to Defendant Braatz, and

Plaintiff's allegations concerning the "retaliatory" posting of the Open Letter only with respect to

Defendants Benitez and Chesek.

### 1. Viewpoint Discrimination

Plaintiff appears to bring a viewpoint discrimination claim against the individual

defendants, alleging that the City's refusal to provide certain requested information and denial of

her fee waiver requests was unlawfully based on her opinions or perspective.[12] *See* ECF No. 2-1

---

[12] Although the claim could be articulated more clearly, dismissing the claim and awaiting an Amended Complaint and a new round of briefing on a Motion to Dismiss when the gravamen of the claim is apparent would be an inefficient use of judicial resources.

¶ 47. "As a general matter, government officials may not restrict speech solely based on the opinion or perspective of the speaker, and imposing financial burdens based on the content of the speech or viewpoint of the speaker runs afoul of the First Amendment." *Wang v. City of Rockville*, No. GJH-17-2131, 2018 WL 801526, at *3 (D. Md. Feb. 7, 2018) (citing *Rosenberger v. Rector and Visitors of Univ. of Virginia*, 515 U.S. 819, 828 (1995)); *see also Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 168 (2015) ("Government discrimination among viewpoints . . . is a 'more blatant' and 'egregious form of content discrimination[.]" (quoting *Rosenberger*, 15 U.S. at 829)).

Plaintiff has not specifically alleged what viewpoint she had that formed the basis of Defendant Braatz's refusal to provide certain information or denial of Plaintiff's fee waiver requests. However, Plaintiff states in the Complaint that she was concerned about a wide range of issues with the City's police department and government, including: "the treatment of Mount Rainier youth [] by the police," *id.* ¶ 13; that the "vast majority of arrestees were African-Americans," *id.* ¶ 14; public corruption, *id.* ¶ 41; and "the legitimacy of the City Council," *id.* ¶ 27. Plaintiff further suggests that her requests constituted "attempt[s] to shed light on the numerous improprieties that are par for the course in the City of Mount Rainier," *id.* ¶ 43, and alleges that Defendants came to view her "as a thorn in their side, with her requests for information [attempting] to hold Braatz, Miles and the City Council accountable," *id.* ¶ 39. It can be inferred from these facts, as well as the content of her public information requests—seeking information such as arrest statistics, stop-and-frisk reports, and information related to the Ethics Commission's selection process—that Plaintiff was seeking information she would use to criticize the City.

Additionally, in Request #9, Plaintiff requested the citizenship status of a number of City officials. *Id.* ¶ 28. In the Complaint, she highlights the City Charter's requirement that "[e]ach candidate for Mayor and Councilmember [] be a resident of the City for at least one year . . . , a registered voter of the City and a United States citizen." *Id.* ¶ 29. She further alleges that she "question[ed] the legitimacy of the City Council," *id.* ¶ 27, and that, with respect to Request #9, she was "a concerned resident [i]nquiring about whether elected members met the minimum qualifications to hold office as stated in the Charter," *id.* ¶ 31. Together, these facts give rise to the strong inference that Plaintiff sought the requested information in order to challenge various officials' qualifications for office.

It is also clear that the City officials interpreted at least certain of Plaintiff's requests as expressions of a particular point of view. The Open Letter, for example, suggests that Plaintiff requested the information to question the legitimacy of certain elected officials. *See* ECF No. 2-1 at 44–45. Additionally, Mr. Sigman stated in his response to Request #9: "[a]lthough the purpose of your PIA requests has no bearing on what the City discloses or withholds – we simply comply with the requirement of the PIA – it appears, based on your requests and the requests of your fellow members of the Mount Rainier Citizens for Government Ethics and Fiscal Responsibility and the Concerned Citizens of Mount Rainier, that you are looking for information to develop several narratives." *Id.* at 56; *see also* ECF No. 16 at 10.

If proven, Plaintiff's allegations that Defendant Braatz and Mr. Sigman denied her MPIA requests and the accompanying fee waivers on the basis of Plaintiff's opinion or perspective would constitute viewpoint discrimination barred by the First Amendment. *See Davison v. Randall*, 912 F.3d 666, 687 (4th Cir. 2019), *as amended* (Jan. 9, 2019) ("Viewpoint discrimination is apparent, for example, if a government official's decision to take a challenged

16

action was 'impermissibly motivated by a desire to suppress a particular point of view.'")

(quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 812–13 (1985)).

      Finally, based on the facts alleged, Defendant Braatz is not entitled to a qualified

immunity defense. The qualified immunity defense "shield[s] [government agents] from liability

for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982). "To defeat a motion to dismiss asserting qualified immunity, a

plaintiff must allege a violation of a legal right that was clearly established at the time of the

misconduct." *Waker v. Owen*, No. RWT 09CV2380, 2010 WL 1416145, at *5 (D. Md. Apr. 6,

2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Taking the facts alleged in the

Complaint as true and drawing reasonable inferences in Plaintiff's favor, it is clear that a

reasonable person in Defendant Braatz's position would have known that denying Plaintiff's

requests for information and fee waivers because of Plaintiff's opinions or viewpoints violates

the First Amendment. *Cf., e.g.*, *Wang v. City of Rockville*, No. GJH-17-2131, 2019 WL 1331400,

at *2 (D. Md. Mar. 22, 2019) (noting "[i]t is axiomatic that the government may not regulate

speech based on its substantive content or the message it conveys" and that denial of a fee waiver

under MPIA based on the requestor's plan to criticize the City would constitute viewpoint

discrimination barred by the First Amendment (quoting *Rosenberger*, 15 U.S. at 828)); *Action

Comm. for Transit, Inc. v. Town of Chevy Chase*, 229 Md. App. 540, 563, 145 A.3d 640, 653

(2016) (finding that the denial of a fee waiver on the basis of the requestor's previous criticism

of town officials imposed financial burdens based upon the content of the appellants' speech in

violation of the First Amendment and that a "decision based upon such unconstitutional

considerations is clearly arbitrary and capricious").

Therefore, the allegations in the Complaint prevent Defendant Braatz from successfully asserting a qualified immunity defense at this stage.

Accordingly, Defendants' Motion to Dismiss is denied with respect to Plaintiff's viewpoint discrimination claim against Defendant Braatz but granted to the extent that claim was asserted against the other individual defendants.

### 2. Retaliation

The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right. *See ACLU v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights."); *see also Pickering v. Board of Educ.*, 391 U.S. 563, 574 (1968) (noting that retaliatory acts can be "a potent means of inhibiting speech"). "[B]y engaging in retaliatory acts, public officials place informal restraints on speech allow[ing] the government to produce a result which [it] could not command directly. Such interference with constitutional rights is impermissible." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000) (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)) (internal citations and quotation marks omitted).

A plaintiff bringing a § 1983 First Amendment retaliation claim must show: (1) that the plaintiff's speech was protected; (2) that "the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech"; and (3) "a causal relationship exists between the plaintiff's speech and the defendant's retaliatory action." *Id.* at 685–86. However, "where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will

18

imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory." *Id.* at 687; *cf. Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) (finding, where a public official's response was not in the form of speech, that "for purposes of a First Amendment retaliation claim under § 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights").

Plaintiff alleges that Defendants' actions regarding the Open Letter "would lead to a suppression of free speech," arguing that, given the current "unforgiving culture," being labeled a racist left her "reputation in tatters."[13] ECF No. 16 at 11. These allegations do not rise to the level of threatening, coercive, or intimidating speech by a public official that implicates a plaintiff's First Amendment speech rights under *Suarez*. While the Open Letter was critical and requested that MD Citizens for Government Ethics and Accountability, led by Plaintiff, withdraw their MPIA request, ECF No. 2-1 ¶ 44, the Open Letter did not use threats of punishment or adverse regulatory action to coerce or intimidate Plaintiff into withdrawing Request #9 or otherwise censoring her speech. *Cf., e.g.*, *Borkowski v. Baltimore Cty., Maryland*, No. CV DKC 18-2809, 2020 WL 5816369, at *2, *13 (D. Md. Sept. 30, 2020) (finding that, where the plaintiff alleged that the defendants sent police detectives to tell her to stop filing charges with the state district court commissioner or she would face criminal charges, "the facts alleged can be construed to be exactly what *Suarez* prohibited: a threat intimating that punishment will imminently follow").

---

[13] Plaintiff also states in her Opposition to Defendants' motions that she suffered negative career consequences, in part due to the interference of Defendant Chesek. ECF No. 16 at 11–12. However, these allegations do not appear in the Complaint, and Plaintiff may not amend her Complaint through her response to a dispositive motion. *See Mylan Lab'ys, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991). Additionally, these actions allegedly took place in 2018, prior to Plaintiff filing Request #9 and the publication of the Open Letter. *See* ECF No. 16 at 11.

Even taking into account the exception to *Suarez*—that "public disclosure of damaging information about an individual may be enough to trigger constitutional protection," *Suarez*, 202 F.3d at 688 (quoting *Mattox v. City of Forest Park*, 183 F.3d 515, 521 n. 3 (6th Cir. 1999))— Plaintiff's claim still fails. Plaintiff's request was not private[14] and its disclosure did not involve any false information about Plaintiff, distinguishing it from cases in which the exception has been applied. *See Suarez*, 202 F.3d at 689 (finding the exception did not apply where the defendant's statements did not "concern[] private information about an individual"); *Bloch v. Ribar*, 156 F.3d 673, 681–82 (6th Cir. 1998) (reversing dismissal of a retaliation claim where a sheriff published the "confidential and highly personal details" of a rape in retaliation for the victim's criticism of the sheriff); *Barrett v. Harrington*, 130 F.3d 246, 262–63 (6th Cir. 1997) (finding the plaintiff properly alleged a retaliation claim where a judge issued press statements falsely accusing a lawyer of stalking her). Additionally, the injuries caused by the public dissemination of her MPIA request do not rise to the level of embarrassment, humiliation, and emotional distress at issue in cases where retaliation was found sufficiently pleaded or established under the *Suarez* exception. *See Mattox*, 183 F.3d at 521 (rejecting a defendant's retaliation claims where injuries involved subjection to "ridicule, contempt, shame, and disgrace" based on the personal nature of information revealed but did not rise to the level of injury in

---

[14] The Court is not aware of any provision of the MPIA or other state law rendering MPIA requests confidential. Although in her March 18, 2019 email to the City Council, Plaintiff asserted that her personal information had been posted "in violation of Maryland code 4-320 and 4-301," those sections do not prohibit the disclosure of her identity or the content of her MPIA request. *See* MD. CODE ANN., GEN. PROV. §§ 4-320, 4-401. Indeed, looking to the analogous FOIA, it appears these requests, including the identity of the requestor, become public upon their submission. *See, e.g.*, *Kwoka v. Internal Revenue Serv.*, No. 17-CV-1157 (DLF), 2018 WL 4681000, at *3, *5 (D.D.C. Sept. 28, 2018) (finding that "neither exemption 3 nor exemption 6 justifies a blanket withholding of [the plaintiff's] request for FOIA requesters' names and organizational affiliations," as "FOIA requesters 'freely and voluntarily address[ ] their inquiries to the IRS, without a hint of expectation that the nature and origin of their correspondence w[ill] be kept confidential.'" (quoting *Stauss v. IRS*, 516 F. Supp. 1218, 1223 (D.D.C. 1981)); DEP'T OF JUSTICE, FREEDOM OF INFORMATION ACT GUIDE, EXEMPTION 6 (2004), https://www.justice.gov/oip/foia-guide-2004-edition-exemption-6 ("FOIA requesters, except when they are making first-party requests, do not ordinarily expect that their names will be kept private; therefore, release of their names would not cause even the minimal invasion of privacy necessary to trigger the balancing test.").

*Bloch* and *Barrett*); *Bloch*, 156 F.3d at 676, 681 (holding that the disclosure of "highly personal and extremely humiliating details" of a rape, including details "so embarrassing [the plaintiff] had not even told her husband," was sufficiently adverse to "chill people of ordinary firmness"). Thus, Plaintiff has failed to state a retaliation claim.

### B. Count II – Defamation

Second, Plaintiff alleges defamation against Defendants Benitez and Chesek, asserting that they made false statements in the Open Letter and at the March 17 meeting on the same issue, exposing Plaintiff to harm. ECF No. 2-1 ¶¶ 52–56. "Although a plaintiff need not plead a defamation claim under the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, the pleadings in a defamation case must still be sufficiently detailed to enable a defendant to appropriately respond." *Estate of Jones v. St. Thomas More Nursing & Rehab Ctr.*, PJM 09-1419, 2009 WL 3247929, at *3 (D. Md. Oct. 1, 2009); *see also Hatfill v. New York Times Co.*, 416 F.3d 320, 329 (4th Cir. 2005) ("While the Federal Rules of Civil Procedure require more specific pleading in certain cases, defamation cases are not among them.").

"Under Maryland law,[15] to establish a *prima facie* case of defamation, a plaintiff must establish that (1) the defendant made a defamatory statement to a third person (a requirement known as publication); (2) the statement was false; (3) the defendant was legally at fault in

---

[15] As a federal court exercising supplemental jurisdiction, this Court must apply the forum state's choice-of-law rules. *See Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996). For tort claims, Maryland adheres to the First Restatement of Conflict of Laws rule, *lex loci delicti*, or the law of the place of the harm, to determine the applicable substantive law. *See Naughton v. Bankier*, 114 Md. App. 641, 691 A.2d 712, 716 (1997). "In defamation actions, the location of the harm is the place where the defamatory statements were published to third parties." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 698 (D. Md. 2011). Where communication is published simultaneously in multiple states, application of Maryland's traditional place of harm rule "becomes cumbersome, if not completely impractical," *Wells v. Liddy*, 186 F.3d 505, 527 (4th Cir. 1999), *cert. denied*, 528 U.S. 1118 (2000), and district courts in this jurisdiction have instead employed a "case-by-case balancing test that, in most cases, results in the application of the law of the plaintiff's state of residence, *see Ground Zero Museum Workshop*, 813 F. Supp. 2d at 699–700. Plaintiff is a citizen of the State of Maryland, ECF No. 2-1 ¶ 2, and absent any evidence of another state with a significant relationship, the Court applies Maryland law.

making the statement; and (4) the plaintiff thereby suffered harm." *Doe v. Johns Hopkins Health Sys. Corp.*, 274 F. Supp. 3d 355, 365 (D. Md. 2017). For a plaintiff to state a claim for punitive damages for the defamation, he must allege that the defamer acted with actual malice. *Le Marc's Mgmt. Corp. v. Valentin*, 349 Md. 645, 651, 709 A.2d 1222, 1225–26 (1998).

Regarding the first element, "a 'defamatory statement' is one that tends to expose a person to 'public scorn, hatred, contempt, or ridicule,' which, as a consequence, discourages 'others in the community from having a good opinion of, or associating with, that person.'" *Piscatelli v. Van Smith*, 424 Md. 294, 306, 35 A.3d 1140, 1147 (2012) (quoting *Indep. Newspapers, Inc. v. Brodie*, 407 Md. 415, 441, 966 A.2d 432, 448 (2009)). "Maryland has retained the common law distinction between defamation *per quod* and defamation *per se*." *Sullivan v. City of Frederick*, No. CV JKB-17-1881, 2018 WL 337759, at *8 (D. Md. Jan. 9, 2018), *aff'd sub nom. Sullivan v. City of Frederick, Maryland*, 738 F. App'x 198 (4th Cir. 2018) "A statement that is defamatory *per se* is one for which the 'words themselves impute the defamatory character,' such that the plaintiff need not plead additional facts demonstrating their defamatory nature." *Doe*, 274 F. Supp. 3d at 365–66 (quoting *Metromedia, Inc. v. Hillman*, 285 Md. 161, 172, 400 A.2d 1117, 1123 (1979)). "In the case of defamation *per quod*, extrinsic facts must be alleged in the complaint to establish the defamatory character of the words or conduct." *Brodie*, 966 A.2d at 448.

Second, "a 'false' statement is one 'that is not substantially correct.'" *Piscatelli*, 35 A.3d at 1147 (quoting *Batson v. Shiflett*, 325 Md. 684, 726, 602 A.2d 1191, 1213 (1992)). "The plaintiff carries the burden to prove falsity." *Id.* "To determine whether a publication is defamatory, a question of law for the court, the publication must be read as a whole: '[W]ords have different meanings depending on the context in which they are used and a meaning not

22

warranted by the whole publication should not be imputed.'" *Id.* (quoting *Chesapeake Publ'g Corp. v. Williams*, 339 Md. 285, 295, 661 A.2d 1169, 1174 (1995)); *see also AIDS Counseling and Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) (stating that where false statements "d[o] not cause the story to produce a different effect on the audience than would have been produced had the truth of the matter been spoken," they are not defamatory).

The third element of a defamation claim, legal fault, "requires a showing that, at a minimum, the party making the false statement acted negligently." *Doe*, 274 F. Supp. 3d at 366 (citing *Hearst Corp. v. Hughes*, 297 Md. 112, 119–23, 466 A.2d 486, 490–92 (1983)). "Negligence is any conduct, except conduct recklessly disregardful of an interest of others, which falls below the standard established by law for protection of others against unreasonable risk of harm. It does not exist apart from the facts and circumstances upon which it is predicated, necessarily involves the breach of some duty owed by a defendant to the plaintiff, and is inconsistent with the exercise of ordinary care." *Mayor and City Council of Baltimore v. Hart*, 395 Md. 394, 410–11, 910 A.2d 463, 472 (2006) (internal citations and quotation marks omitted). Actual malice, a higher degree of fault, requires a showing that the defendant made the defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Batson*, 602 A.2d at 728 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)).

Finally, "[f]or the fourth element, actual harm must generally be established, but in cases in which the statement was defamatory *per se* and was made with actual malice, harm may be presumed." *Doe*, 274 F. Supp. 3d at 366.

Importantly, an individual generally cannot be held liable for a statement of opinion—a defamation claim must be premised on a false statement of fact. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 (1974) ("Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas."). Indeed, "[w]hen a statement is made in the form of an opinion, it becomes actionable 'only if it implie[s] the allegation of undisclosed facts as the basis for the opinion.'" *Agora, Inc. v. Axxess, Inc.*, 90 F. Supp. 2d 697, 704 (D. Md. 2000), *aff'd*, 11 F. App'x 99 (4th Cir. 2001) (quoting *Peroutka v. Streng*, 116 Md. App. 301, 319, 323, 695 A.2d 1287, 1296 (1997); *see also McReady v. O'Malley*, 804 F. Supp. 2d 427, 441 (D. Md. 2011), *aff'd*, 468 F. App'x 391 (4th Cir. 2012). However, "[i]f the facts from which a defendant forms his or her opinion are given or are readily available and those facts cannot be proved false, the defendant is not subject to liability for the opinion." *Peroutka*, 695 A.2d at 1297.

Plaintiff's Opposition includes a four-page chart detailing 13 allegedly defamatory statements. ECF No. 16 at 17–20. Nearly all of them are opinions Defendants expressed based on true and disclosed facts—primarily, that Plaintiff filed Request #9, which sought information concerning the citizenship status of various elected officials—that do not constitute defamatory statements. *See, e.g.*, *id.* at 19 ("I call this FOIA request what it is – xenophobic and alarmist."); *id.* at 17 ("It is hard to take this request as anything but a thinly-veiled attempt to provoke and convey distrust."); *id.* at 19 ("This action continues a concerning trend started by the group's organizer, Charnette Robinson, where in the last election she questioned my residency status and the voting rights of immigrants in Mount Rainier."). The Open Letter certainly implies Plaintiff is a "bully" engaging in "destructive behavior" counter to "the things Mount Rainier is better

24

known for – inclusiveness, and community." *See id.* at 18, 20. But these statements, however charged and ultimately damaging to her reputation, are the author's thoughts and commentary on true events—not statements of fact that can be proved decidedly false. *See Gertz*, 418 U.S. at 339–40; *see also Lane v. Random House, Inc.*, 985 F. Supp. 141, 150 (D.D.C. 1995) ("Full constitutional protection exists for rhetoric that, due to its loose, figurative tone cannot reasonably be interpreted as stating actual facts about an individual, and for imprecise statements that are not susceptible of being proved true or false." (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20–21 (1990)). A defamation claim requires more than statements causing harm.

The only statement that is not an opinion is one that Plaintiff argues is defamatory because it disclosed the contents of Request #9 and identified the group that made the request. *See* ECF No. 16 at 19 (listing the "reason defamatory" for that statement as "[s]pecifically identified the group," meaning identified Mount Rainier, MD Citizens for Government Ethics and Accountability as the requestor). However, these statements are not defamatory, as they are not false. Plaintiff did, in fact, make Request #9.

Finally, to the extent several of the stated opinions in the Open Letter also convey characterizations of the facts, those characterizations cannot be considered "substantially incorrect," and thus are not defamatory. *See Piscatelli*, 35 A.3d at 1147. For example, Plaintiff takes issue with the statement, "I find it unacceptable and harmful for neighbors to ask one another about their citizenship status," arguing that this request was not from one neighbor to another, but "a resident confirming the qualifications of elected officials." ECF No. 16 at 17. But the fact that Plaintiff was inquiring about the qualifications of elected officials does not mean she was not also asking about the citizenship status of her neighbors, i.e., those living in her town. The statement in the Open Letter may reflect some degree of rhetorical flair on the author's part,

25

but that does not make it untrue. Moreover, because the underlying facts of the request were also disclosed, the Open Letter's characterization ultimately "d[oes] not cause the story to produce a different effect on the audience than would have been produced had the truth of the matter been spoken." *AIDS Counseling and Testing Ctrs.*, 903 F.2d at 1004.

Similarly, Plaintiff appears to argue that, because Defendants—not Plaintiff—publicized the request, the statements in the Open Letter that the request was an "attempt to provoke and convey distrust" and "cloud the legitimacy of an elected official" cannot be true. *See* ECF No. 16 at 18. In other words, Plaintiff argues that the opinions stated in the Open Letter rely on an untrue characterization of the facts—the Open Letter suggests that the request and resulting information were intended to be publicly shared, but Plaintiff did not share them. *See id.* But MPIA requests are public documents, and Plaintiff was requesting the information for some purpose, which was unlikely designed to be private in nature. Indeed, Plaintiff alleged that she "question[ed] the legitimacy of the City Council," ECF No. 2-1 ¶ 27, was "a concerned resident [i]nquiring about whether elected members met the minimum qualifications to hold office as stated in the Charter," *id.* ¶ 31, and requested fee waivers on the basis that "the requested information is in the public interest and [would] contribute to the public's understanding" of various issues, *see, e.g.*, *id.* at 18, 20. Plaintiff cannot credibly argue that the request was not intended to publicly challenge the legitimacy of Mount Rainier's elected officials. Thus, even looking to the characterization of facts accompanying the opinions stated in the Open Letter, Plaintiff fails to allege that those statements were defamatory.

Finally, while the Open Letter states, "[t]his FOIA request is not normal, and no better than a racist pursuit of a president's birth certificate," Plaintiff states that this is because "[n]o one asked for her birth certificate." ECF No. 16 at 18. However, the Open Letter did not say that

she did, but instead drew a comparison between Plaintiff's Request #9 and, presumably, the conspiracy theory regarding President Barack Obama's birthplace. Plaintiff cannot base her claim on clear misinterpretations unsupported by the facts alleged.

In sum, Plaintiff was publicly criticized by her political rival, but based on the allegations in the Complaint, that criticism did not amount to defamation.[16] Accordingly, Plaintiff's defamation claim is dismissed.

### C. Count III – MPIA Violations

Plaintiff alleges that Defendant City of Mount Rainier ("the City") unlawfully denied her nine MPIA requests for information and four requests for fee waivers.[17] ECF No. 2-1 ¶¶ 57–63. Specifically, she alleges that the City did not produce all of the requested documents, that it produced some documents in redacted form, that it provided false claims as justification for withholding or redacting those documents, and that it improperly denied her fee waiver requests. *See id.* ¶¶ 59–63.

"Judicial review of an agency's decision on MPIA requests is authorized by GP § 4-362, which permits a person who is denied inspection of a public record to challenge the denial by filing a complaint in the circuit court." *Action Comm. for Transit, Inc. v. Town of Chevy Chase*, 229 Md. App. 540, 558, 145 A.3d 640, 650 (2016). The circuit court reviews "*de novo* any

---

[16] Moreover, even had Plaintiff stated a defamation claim, it would have been time-barred with respect to the publication of the Open Letter, as Maryland's statute of limitations for defamation claims is one year, MD. CODE ANN. CTS. & JUD. PROC. § 5–105, and Plaintiff did not file her state court complaint until June 24, 2020, ECF No. 2-2. *See McClure v. Lovelace*, 214 Md. App. 716, 741, 78 A.3d 934, 949 (2013), *aff'd sub nom. Amalgamated Transit Union v. Lovelace*, 441 Md. 560, 109 A.3d 96 (2015). Plaintiff's claims would only survive to the degree they were based on statements made at the meeting on March 17, 2019, as a Maryland state court order tolled statutes of limitation deadlines from March 16, 2020 through July 20, 2020, due to the COVID-19 pandemic, rendering those claims timely if adequately pleaded. *See* COURT OF APPEALS OF MARYLAND ADMINISTRATIVE ORDER ON EMERGENCY TOLLING OR SUSPENSION OF STATUES OF LIMITATIONS AND STATUTORY AND RULES DEADLINES (Apr. 3, 2020), https://www.mdcourts.gov/sites/default/files/admin-orders/20200403emergencytollingorsuspensionofstatutesoflimitationsetc.pdf.
[17] Plaintiff requested fee waivers in Request #2, Request #3, Request #4, and Request #9. *See* Section I.A–B.

purported errors in interpreting the Act itself." *Comptroller of Treasury v. Immanuel*, 216 Md.

App. 259, 266, 85 A.3d 878, 883 (2014), *aff'd Immanuel v. Comptroller*, 449 Md. 76, 141 A.3d

181 (2016). However, a denial of a fee waiver may be overturned only if it is "arbitrary and

capricious." *See Action Comm. for Transit, Inc.*, 145 A.3d at 650–51. In considering an MPIA

dispute, the reviewing court "considers not only the agency record, but also facts generated 'by

pleadings, affidavit, deposition, answers to interrogatories, admission of facts, stipulations and

concessions.'" *Id.* at 651 (quoting *Prince George's Cty. v. The Washington Post Co.*, 149 Md.

App. 289, 304, 815 A.2d 859, 868 (2003)).

First, with respect to the withholding of certain information under MPIA in response to

Plaintiff's requests, Plaintiff has sufficiently pleaded her MPIA claim. Under G.P. § 4-362(a)(1),

a person denied inspection of a public record or not provided with a copy of it as requested may

file a complaint with the circuit court.[18] The defendant is then required to answer or respond to

the complaint "[u]nless, for good cause shown, the court otherwise directs." *Id.* § 4-362(b)(1).

Where Plaintiff has alleged that documents were improperly withheld or redacted in response to

nine MPIA requests, the Court finds no reason why the City should not respond to Plaintiff's

MPIA claim. *Cf. Antonelli v. Fed. Bureau of Prisons*, 591 F. Supp. 2d 15, 24 (D.D.C. 2008)

("Thus, the elements of a FOIA claim are (1) improperly (2) withheld (3) agency records.").[19]

Counter to Defendants' arguments that the claim "lacks specificity," as Plaintiff "has not

---

[18] Plaintiff thus filed her complaint in the Circuit Court for Prince George's County. *See* ECF No. 1; ECF No. 2-1. However, Defendants then removed the action to this Court, ECF No. 1, invoking the Court's jurisdiction over the federal law claims under 28 U.S.C. § 1331. The Court further exercises supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

[19] Maryland courts have dismissed complaints alleging the improper withholding of information under MPIA where the defendants contested the plaintiff's claims on the merits, arguing that the response did not, in fact, violate MPIA, or where the defendants asserted that the plaintiff had filed prematurely, before the defendants had actually denied the request. *See, e.g.*, *Lamson v. Montgomery Cty.*, 460 Md. 349, 357–58, 190 A.3d 316, 321–22 (2018); *Harden v. Bishop*, No. 0786 SEPT. TERM 2014, 2016 WL 4379130, at *7 (Md. Ct. Spec. App. Aug. 17, 2016). The City has not made such arguments here, instead asserting only that Plaintiff's claim lacks specificity. The Court disagrees.

provided any particulars setting forth the specific requests that she made, the City's response, and the alleged deficiency," ECF No. 4-1 at 18, Plaintiff includes descriptions of each of her requests as well as the City's responses and attaches many of these documents to her Complaint, *see generally,* ECF No. 2-1. Additionally, Plaintiff specifies the basis of her disagreement with the City's responses, alleging that Defendants improperly withheld documents as personnel records under G.P. § 4-311. *See id.* ¶¶ 60–62. Therefore, Plaintiff has alleged sufficiently specific facts to state a claim, and Defendants' Motions to Dismiss Count III are denied with respect to the allegedly deficient responses.

The Court thus proceeds to Plaintiff's allegations that the City unlawfully denied her fee waiver requests under the MPIA. *See* ECF No. 2-1 ¶¶ 59, 63. The Complaint does not state whether two of the MPIA requests that included fee waiver requests—Requests #2 and #4—received responses. However, the response provided by Defendant Braatz to Request #3 as well as Mr. Sigman's response to Request #9 explicitly denied her fee waiver requests on the basis that Plaintiff had failed to demonstrate an "inability to pay" and that the City "is not aware of broad public interest or demand" for the requested information. *Id.* at 23, 53. The Court is aware of only two Maryland cases evaluating denials of fee waivers under G.P. § 4-206(e)(2)(ii). In *Mayor and City Council of Baltimore v. Burke*, the Maryland Court of Special Appeals ruled that an agency's decision to deny a fee waiver based solely on the ability of the applicant to pay the fee, without considering "other relevant factors" or the public interest, was arbitrary and capricious. 67 Md. App. 147, 157, 506 A.2d 683, 688 (Md. Ct. Spec. App. 1986). Twenty years later, in *Action Committee for Transit, Inc.*, the same court found that an agency's decision to deny a fee waiver based primarily on the applicant's prior criticism of that agency violated the First Amendment's prohibition on viewpoint discrimination and was therefore "clearly arbitrary

and capricious." 145 A.3d at 653–54. Here, it appears that the City considered factors beyond Plaintiff's ability to pay, distinguishing this case from *Burke*. However, as discussed in Section III.A.1, Plaintiff has alleged that the denials of the fee waivers were motivated by Plaintiff's viewpoint, which, following *Action Comm. for Transit, Inc.*, would render the City's denials arbitrary and capricious if proven true. Accordingly, based on the facts alleged, Plaintiff has sufficiently stated a claim that the City's denials of her fee waivers were arbitrary and capricious, and Defendants' Motions to Dismiss are denied as to the fee waiver claim in Count III.

### D.  Count IV – § 1983 Conspiracy

Plaintiff brings a conspiracy claim against the individual defendants under § 1983. ECF No. 2-1 ¶¶ 64–66. "Section 1983 includes protection against conspiracies to violate civil rights." *Ruttenberg v. Jones*, 283 F. App'x 121, 131 (4th Cir. 2008). "To establish a civil conspiracy under § 1983, [the plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in Appellants' deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). Plaintiff thus "needed to plead facts that would 'reasonably lead to the inference that Appellees positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan.'" *Ruttenberg*, 283 F. App'x at 131 (quoting *Hinkle*, 81 F.3d at 421). Moreover, "plaintiffs must at least be able to show a deprivation of a constitutional right as a result of the alleged conspiracy." *Shooting Point, L.L.C. v. Cumming*, 243 F. Supp. 2d 536, 537 (E.D. Va. 2003). "This is because '[t]he gist of the cause of action is the deprivation and not the conspiracy.'" *Id.* (quoting *Lesser v. Braniff Airways, Inc.*, 518 F.2d 538, 540 n.2 (7th Cir. 1975)).

Plaintiff alleges the individual defendants "conspired with one another to inflict an injury and wrong upon Robinson by subjecting her to an absolute and complete character assassination"

in order to distract Plaintiff, to "discourage her from further attempts to investigate the conduct of the police department" and City officials, to "damage her chances for election to the City Council," and to "ruin her reputation." ECF No. 2-1 ¶ 65. In her Opposition to Defendants' Motion to Dismiss, Plaintiff elaborates on this claim, arguing that, because (i) she mailed Request #9 to City Manager Miranda Braatz at City Hall on February 15, 2019, (ii) City Rules dictate that "'[a]ny correspondence relevant to City business or the Mayor and Council that is received at City Hall, by post, fax, email or hand delivery will be copied to all members of the Mayor and Council regardless of to whom it is addressed,'" and (iii) Defendant Benitez published the Open Letter on March 3, 2019, despite not having been the direct recipient of Request #9, "it is not an unreasonable inference" that "Councilmembers, City Manager and Mayor met and discussed her MPIA request" between those dates. ECF No. 16 at 24 (quoting ECF No. 16-3 at 19). Plaintiff also points to the other individual defendants' silence in the wake of the Open Letter's publication as further evidence of the conspiracy among them. *Id.* at 24–25.

Plaintiff's conspiracy claim hinges on her First Amendment retaliation claim—specifically, the allegedly retaliatory posting of the Open Letter. *See Shooting Point*, 243 F. Supp. 2d at 537 ("[A] deprivation of a federal constitutional right is an essential element of a section 1983 conspiracy claim[.]"). For the reasons stated above, Plaintiff failed to state a claim that the posting of the Open Letter violated her First Amendment rights. *See* Section III.A.2. Accordingly, because that claim failed, Plaintiff's conspiracy claim does as well, and Defendants' Motions to Dismiss are granted with respect to Count IV.

### E.  Count V – First Amendment Claim Against City Under § 1983

In addition to her First Amendment claims against the individual defendants, Plaintiff brings a § 1983 *Monell* against the City of Mount Rainier, alleging the City violated her First

Amendment rights. ECF No. 2-1 ¶¶ 67–71. It is well settled that municipalities and other local government units can be sued under § 1983 "when execution of a government's policy or custom . . . inflicts the [plaintiff's] injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see, e.g.*, *Bd. of Comm'rs of Bryan Cty., v. Brown*, 520 U.S. 397, 403–04 (1997); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). While *Monell* does not impose heightened pleading requirements above the basic "short and plain statement" requirement of Fed. R. Civ. P. 8(a), *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), it still requires Plaintiff to adequately plead "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of [his] rights," *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994); *see also Grim v. Baltimore Police Dep't*, No. CV ELH-18-3864, 2020 WL 1063091, at *5 (D. Md. Mar. 5, 2020) ("[A] viable § 1983 *Monell* claim consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights.").

Plaintiff alleges that "Braatz, Miles and the City Council maintained policies and customs exhibiting deliberate indifference to the constitutional rights of the citizens of the City of Mount Rainier." ECF No. 2-1 ¶ 68. Plaintiff specifically states that Defendant Braatz failed to "respond lawfully" to Plaintiff's MPIA requests, *id.* ¶ 69, and that the City maintains "consistent policies of refusing to comply with the requirements of Maryland Public Information Act," *id.* ¶ 71. Plaintiff also bases her claim on the City's failure to stop or prevent Defendants Benitez and

Chesek from publishing the Open Letter or to take it down after the fact. *Id.* ¶ 70; *see also* ECF No. 16 at 25.[20]

To the extent Plaintiff alleges that the City is liable under § 1983 for policies facilitating non-compliance with the MPIA, that claim fails, as claims brought under § 1983 must allege that a policy or custom is unconstitutional or violates certain federal statutory rights, not that it violates a state statute. *See Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017) (citing *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *Hill v. Umpstead*, 639 F. App'x 60, 62 (3d Cir. 2016). Additionally, as the publication of the Open Letter has been found not to have violated Plaintiff's First Amendment rights, the City's failure to stop or react to the Open Letter cannot support a *Monell* claim, as the City cannot be held liable under § 1983 for failing to correct or terminate actions that are not actually unconstitutional. *See* Section III.A.2. Therefore, Plaintiff's claim against the City only survives if she sufficiently alleges that the City, through its policies and customs, violated her First Amendment rights when it failed to comply with the MPIA due to viewpoint discrimination. The Court has already found that Plaintiff sufficiently stated a claim of viewpoint discrimination with respect to Defendant Braatz. *See* Section III.A.1. However, Plaintiff still needs to show that that alleged violation of her constitutional rights was attributable to an official City policy or custom.

Plaintiff can show the existence of a policy or custom in four ways: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a

---

[20] Plaintiff also raises her allegations of conspiracy and supervisory liability in her *Monell* claim. ECF No. 2-1 ¶ 69. Because those allegations are addressed in the sections of this opinion addressing Counts I and IV, and Plaintiff does not separately tie those allegations to a City policy or custom, the Court does not address them again here.

practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" *Lytle*, 326 F.3d at 471 (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).

Plaintiff's Complaint does not reference an express policy, such as a written ordinance or regulation. Nor does it allege that Defendant Braatz and Mr. Sigman exercised final policymaking authority in responding to her requests or that the City failed to train its officials. Whether the Complaint alleges the existence of a persistent and widespread practice presents a slightly closer question.

Plaintiff alleges that City officials, specifically Defendant Braatz and Mr. Sigman, unlawfully denied her nine MPIA requests for information and four requests for fee waivers on the basis of her opinion in violation of her First Amendment rights. *See* ECF No. 2-1 ¶¶ 47, 58–63, 68–69. Plaintiff further alleges that these denials are part of the City's "consistent policies of refusing to comply with the requirements of the" MPIA. *Id.* ¶ 71. But this conclusory statement is insufficient where it is supported by factual allegations involving Plaintiff alone—she does not point to any other instances of the City's discriminatory conduct or otherwise allege that its discrimination extends beyond herself. "Sporadic or isolated violations of rights will not give rise to *Monell* liability; only 'widespread or flagrant' violations will." *See Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 403 (4th Cir. 2014) (quoting *Spell v. McDaniel,* 824 F.2d 1380, 1390 (4th Cir. 1987) (finding the plaintiff's *Monell* claim—based on a policy or custom of withholding exculpatory evidence from criminal defendants—survived where he alleged that "reported and unreported cases" from before and during the events at issue, as well as "numerous 'successful motions'" in other criminal cases, showed similar conduct by officers and that the department ignored this conduct); *see also Weeden v. Prince George's Cty.*, No. GJH-17-2013, 2018 WL 2694441, at *4 (D. Md. June 4, 2018) (dismissing *Monell* claim where the plaintiff

offered broad, general allegations of a widespread practice but identified only one specific instance of unconstitutional conduct). Because Plaintiff has not alleged the existence of a widespread unconstitutional practice that constitutes a custom with the force of law, and thus has not alleged the City maintained an official policy or custom that caused the violation of her constitutional rights, she has failed to state a *Monell* claim against the City. Therefore, Defendants' Motions to Dismiss are granted as to Count V.

###    F.  Count VI – Violations of Articles 19 and 40

Finally, Plaintiff brings claims under Articles 19 and 40 of the Maryland Constitution against the individual defendants. ECF No. 2-1 ¶¶ 73–75. The First Amendment provides that, "Congress shall make no law. . . abridging the freedom of speech," and Article 40 provides that "every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects." Article 40 is thus "'co-extensive' with the First Amendment, and is construed *in pari materia* with it." *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 468 n. 3 (4th Cir. 2012); *see also Nefedro v. Montgomery Cty.*, 996 A.2d 850, 855 n.5 (2010) (same).[21] Accordingly, because Plaintiff's viewpoint discrimination claim survives, her parallel state constitutional claim does as well. However, to the extent her state constitutional claim incorporates her First Amendment retaliation claim, it is dismissed.

---

[21] Additionally, Article 19 "guarantees a citizen the opportunity to seek judicial redress of a wrong," *Dehn Motor Sales, LLC v. Schultz*, 96 A.3d 221, 237 n.27 (2014), and may be analyzed jointly with the First Amendment and Article 40, *see Peroutka v. Streng*, 695 A.2d 1287, 1291 (1997); *see also Durham v. Rapp*, 64 F. Supp. 3d 740, 750 (D. Md. 2014).

**IV.** **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Extend Time to Respond, ECF No. 13, is granted, and Defendants' Motions to Dismiss, ECF Nos. 4, 7, 21, are granted, in part, and denied, in part. A separate Order follows.


Date: <u>March 31, 2021</u>                          ____/s/_____
                                                    GEORGE J. HAZEL
                                                    United States District Judge